# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIDGE CRANE SPECIALISTS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TNT CRANE & RIGGING, INC., )<br>)<br>Defendant. ) | Case No. 21-cv-405-TCK-JFJ |

.

## OPINION AND ORDER

Before the Court is the Motion to Dismiss for Improper Venue or, Alternatively, to Transfer Pursuant to 28 U.S.C. § 1404 filed by defendant TNT Crane and Rigging, Inc. ("TNT") pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). Doc. 12. In its Motion, TNT asserts that venue is improper in this forum under 28 U.S.C. § 1391 and argues that the case should either be dismissed or transferred to the United States District Court for the Southern District of Texas. *Id.* Alternatively, TNT seeks transfer of the Case to the Western District of Texas pursuant to 28 U.S.C. §1404(a), based on the parties' forum selection clause. Plaintiff Bridge Crane Specialists, LLC, ("Bridge Crane") opposes the motion. Doc. 14.

This lawsuit arises from an accident that occurred in Austin, Texas at the construction site of the Austin Tesla Gigafactory. Plaintiff Bridge Crane is an Oklahoma limited liability company whose members are domiciled in Tulsa County, Oklahoma. Defendant TNT is a Texas corporation with its principal place of business in Harris County, Texas. The Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

**I. Allegations of the Complaint**

Bridge Crane is an Oklahoma limited liability company whose members are domiciled in Tulsa County, Oklahoma. Doc. 2, Complaint, ¶1.  TNT is a Texas Corporation with its principal place of business in Harris County, Texas. *Id.*, ¶2.

Bridge Crane—a leading designer, manufacturer and quality service provider of overhead cranes and material handling equipment—was tasked with installing the north bridge crane in the casting bay, which required the use of cranes and operators. *Id.*, ¶6.  In June 2021, Bridge Crane and TNT entered into a verbal agreement for TNT to provide the equipment and personnel needed to assist with the job.  *Id.*, ¶8.  The agreement was memorialized by way of TNT's Ticket No. 316609 to Bridge Crane (the "ticket"). *Id.* The ticket described the required equipment for the job as two choked short slings good for 25,000 lbs, adjustable rigging chains for the cranes, and snatch blocks for both cranes. *Id.*, ¶9.  The ticket also stated that TNT was to pick and set "two girders and hoist for a one-hundred-ton bridge crane." *Id.,* ¶10.  The ticket noted that Plaintiff preferred prior employees who had been to the job site, but that, at a minimum, employees must have online orientation before the job date. *Id.*, ¶11.

Installation for the job took place on or about June 30, 2021. *Id.*, ¶12.  The north and south bridge girders went up without issue, using the standard load block. *Id.*  The crew then moved a hoist trolley into place with a designed lifting skid, in order to rig the hoist for a tandem crane lift, with the cranes positioned at the east and west. *Id.*, ¶13.  TNT, in lifting the hoist/rack, replaced the standard load block with a snatch block due to lack of headroom. *Id.*, ¶14.

When one of the TNT cranes—a seventy-ton Link-Belt crane—stalled short of the bottom on the girders, TNT brought the hoist back down. *Id.* ¶15.  Instead of adjusting slings or chains, TNT operators believed that if they lifted at a slight angle, allowing the seventy-ton Link-Belt

crane to lead, the crane would not stall and transfer more load to the Link-Belt 8690 crane positioned on the west side. *Id.*, ¶16. TNT proceeded with the angled lift and, at about the point that the lift reached forty feet, the angle grew. *Id.*, ¶17. Bridge Crane's crew signaled and yelled for TNT to stop the lift. *Id.* The TNT employees operating the cranes were using their cell phones and did not see the spotters or signals, nor did they hear any of the yelling. *Id.*, ¶18.

The west crane (Link-Belt 8690) stopped and the east crane (seventy-ton Link-Belt) continued lifting, exaggerating the angle even more. *Id.*, ¶19. Spotters were running and yelling. *Id.* The Link-Belt 8690 cable snapped and the hoist trolley fell to the ground, coming to rest against the rear outrigger of the crane. *Id.*, ¶20. The force from the fallen hoist caused the lifting skid to be thrown against the boom of the east crane, where it became entangled with the jib storage lug on the east side of the boom. *Id.*, ¶21.

The Complaint asserts a claim for negligence against TNT and seeks damages in excess of $75,000. *Id.*, ¶¶22-25.

**II. Motion to Dismiss for Improper Venue**

Bridge Crane contends venue in the Northern District of Oklahoma is proper under 18 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to its claims occurred in this district. In response, TNT argues venue in this District is improper under 28 U.S.C. §1391(b)(2) and that—pursuant to the mandatory forum selection clause in the agreement—the proper venue for this case is the Southern District of Texas. Alternatively, TNT asserts that venue is proper in the Western District of Texas, where the accident giving rise to this case occurred.

**A. Applicable Law**

In a diversity action, venue may lie in:

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located (2) a judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred,. . .; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. §1391(b)(2). Transfer to another district court is governed by 28 U.S.C. §1404(a), which provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The party moving to transfer a case pursuant to §1404(a) bears the burden of establishing that the existing forum is inconvenient. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). "[U]nlesss the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Id.* However, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). A party's waiver of rights under a forum selection clause must be clear and unequivocal.

### B. Analysis

The Tenth Circuit has held that §1404(a) gives courts discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Once an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper. *McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D. Tex. 2001). However, when venue is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the plaintiff must make only a *prima facie* showing that venue is proper in its chosen forum.

4

In support of its position, Bridge Crane relies on §1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . ."

The decision whether to transfer a case lies within the sound discretion of the trial court. *Texas Gulf Sulphur*, 371 F.2d at 147. "The purpose of § 1404(a) is to avoid wasting time, energy, and money and, in addition, to safeguard parties, witnesses, and the public against avoidable inconvenience and expense." Moore's Federal Rules Pamphlet § 1404.2[2] (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach et al.*, 523 U.S. 26 (1998)).

Bridge Crane asserts that sufficient facts exist to establish that venue in the Northern District of Oklahoma is proper pursuant to §1391(a)(2).

Where—as in this case—the defendant challenges venue under 28 U.S. §1391(a)(2), the Court must conduct a two-part analysis. First, it must examine the nature of the plaintiff's claims and the acts or omissions underlying those claims and second, it must determine whether "substantial events material to those claims occurred in the foreign district." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010).

**1. Propriety of Venue in the Southern District of Texas**

Before deciding whether transfer of this case is appropriate, the Court must initially determine whether the case "might have been brought" in the Southern District of Texas. Under 28 U.SC. § 1391(b), venue is proper in a judicial district in which the defendant resides or any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." Because the Complaint alleges that TNT is a Texas Corporation with its principal

place of business in Harris County, Texas, venue is proper in the Southern District of Texas.

### 2. Propriety of Venue in the Northern District of Oklahoma

The written quote TNT gave Bridge Crane states:

> **Choice of law/dispute resolution.**  The rights and obligations of the parties hereunder shall be governed and construed in accordance with the laws of the State of Texas, excluding any conflicts of laws or rules which would refer its interpretation to the laws of another jurisdiction. . . . . **Venue for any state court action taken against Lessor shall be in Harris County, Texas, and venue for any federal court action taken against Lessor shall be in the Southern District of Texas, Houston Division**.

Doc. 12-1 at 2. A (emphasis added).  TNT asserts that pursuant to this language, venue in the Northern District of Oklahoma is inappropriate.

Plaintiff concedes the original written quote contains the venue clause, but it argues that it is unclear whether the terms and conditions of TNT's quote are the same as the terms and conditions it actually accepted under the purchase order. Specifically, it points out that:

- The original quote is unsigned and dated six months before the date of the PO.  Doc. 12-1, Exs. 1-2.

- The ASC Number on the PO does not match that of the Quote; Doc. 12-1, Exs. 1-4.

- The PO's Accepted Terms and Conditions do not expressly incorporate the Quote or even reference the Quote.  Doc. 12-1, Exs. 1-2, 1-4.

Doc. 14 at 6-7.

Waiver of one's rights under a forum selection clause must be "'clear and unequivocal," and "ambiguities with a forum selection clause must be construed against the drafter." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).

The Court finds that—considered collectively—the relevant documents create an ambiguity about which terms and conditions of the PO were actually accepted when Bridge Crane

checked the box on the PO. Accordingly, it rejects TNT's argument that Bridge Crane waived its right to bring suit in this District.

Citing *Mobeetie Res. Dev. LLC v. Polyflow, Inc.*, 9-CV-309-CVE-PJC, 2009 WL2252117 (N.D. Okla. July 28, 2009)—Bridge Crane further argues that venue in this District is proper because TNT's quote for performing the job and its invoice for the job were sent from Texas to Plaintiff in Oklahoma. Doc. 14 at 5. In *Mobeetie*, the plaintiff asserted claims against defendant for breach of contract, breach of warranty, and tort claims. *Id.* The court concluded that contract formation, invoice receipt and settlement negotiations which occurred in the Northern District of Oklahoma were sufficient to establish venue in this district. *Id.* at *3. In so ruling, the court stated:

> The plaintiff does not have to establish that his chosen venue has the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred [there], even if a greater part of the events occurred elsewhere.

*Id.* at *2.

However, a subsequent Tenth Circuit decision—*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153 (10th Cir. 2010)—undermines Bridge Crane's reliance on *Mobeetie*. In *Bartile*, the appellate court set forth the following analysis for determining whether venue is proper under 28 U.S.C. §1391(a)(2):

> We conduct a two-part analysis when reviewing challenges to venue under §1391(a)(2). First, we examine the nature of the plaintiff's claims and the acts or omissions underlying those claims.
> \* \* \*
> Second, we determine whether substantial events material to those claims occurred in the forum district. The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims.

*Id.* at 1166 (internal quotation marks omitted). *See also* 14D, Wright & Miller, Federal Practice and Procedure, §3806 (4th ed.).

Applying the appellate court's analysis in *Bartile*, the Court notes that Bridge Crane's Complaint does not allege breach of contract, which would arguably support its position that venue is proper in this district. Instead, its sole claim against TNT is for negligence, which—according to the Complaint—occurred at a construction site in Austin. Accordingly, the Court concludes that venue for this case does not lie in the Northern District of Oklahoma.

### 3. Propriety of Venue in the Southern District of Texas

TNT asserts that venue is appropriate in Houston. The Complaint, though, does not allege any facts establishing that events material to Plaintiff's claims occurred in Houston. Accordingly, the Court rejects its argument that the case should be transferred to Houston.

### 4. Propriety of Venue in the Western District of Texas

TNT's alternative argument—that the case should be transferred to the Western District of Texas pursuant to 28 U.S.C. §1404—is more compelling. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . .

The incident giving rise to this lawsuit occurred in Austin, which is located in the Western District of Texas. Accordingly, evidence pertaining to the incident—including the site itself and witness testimony—would likely be more easily accessible if the case were to be litigated there instead of either the Northern District of Oklahoma or the Southern District of Texas. Accordingly, the Court concludes that this action should be transferred to the Western District of Texas pursuant to 28 U.S.C. §1404(a).

## III. Conclusion

For the foregoing reasons, TNT's Motion to Dismiss or Transfer for Improper Venue or Alternatively, to Transfer Pursuant to 28 U.S.C. §1404, is denied in part and granted in part. The

motion to dismiss and the motion to transfer venue to the Southern District of Texas are denied.

The alternative motion to transfer venue to the Western District of Texas is granted.

**ENTERED this 1st day of April, 2022.**

**TERENCE C. KERN**
**United States District Judge**